IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFFREY S. MANNING,

        Plaintiff,

    v.                            Civil Action 2:15-cv-2316
                                   Chief Judge Edmund A. Sargus, Jr.
                                   Magistrate Judge Jolson

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Jeffery S. Manning, filed this action under 42 U.S.C. § 405(g) seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying his applications for period of disability, disability insurance benefits, and supplemental security income. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g).

I.      FACTUAL AND MEDICAL BACKGROUND

Plaintiff filed this case on June 2, 2015 (Doc. 4), and the Commissioner filed the administrative record on August 4, 2015 (Doc. 10). Plaintiff filed a Statement of Specific Errors on September 10, 2015 (Doc. 12), the Commissioner responded on December 15, 2015 (Doc. 18), and Plaintiff filed a Reply Brief on December 29, 2016 (Doc. 19).

### A.  Personal Background

Plaintiff was born on April 27, 1966, and was forty-five years old on the alleged onset date of disability.  (Tr. 31, PAGEID #79).   He has a high school education (Tr. 45, PAGEID #93), and work experience as a housekeeper, delivery driver, valet driver, forklift operator, sales associate, cashier, and warehouseman.  (Tr. 53, 55–56, 58–59, PAGEID #101, 103–104, 106–107).  Plaintiff is also a veteran who enlisted in the Air Force in December, 1984, and was honorably discharged in December, 1989.  (Tr. 82, PAGEID #427).  He is enrolled in college, taking courses in human resources management.  (Tr. 46, PAGEID #94).

### B.  Relevant Hearing Testimony

During the hearing, Plaintiff reported that he has suffered from depression for nineteen years.  (Tr. 75, PAGEID #123).  He testified that he has been taking the same dosage of Citalopram for over two years, and it helps him to feel calm and relaxed.  (Tr. 49, PAGEID #97).  He stated that he sees his psychiatrist, Dr. Clemente, "[a]bout once a month, once every six weeks."  (Tr. 50, PAGEID #98).

Plaintiff stated that his depression affects his daily life by causing him "to go off into [his] own little world and just be."  (Tr. 63, PAGEID #111).  Plaintiff testified that he is able to interact with others.  Specifically, Plaintiff reported that he talks to his mother and sister regularly, interacts with friends four or five times per week, and has had a girlfriend for approximately six years.  (Tr. 77–78, PAGEID #126–27).

Plaintiff reported family issues, worry, and stress arising from concerns about managing his finances, finding work, and controlling his diabetes.  (*Id.*).  He described his sleep as erratic due to stress.  (Tr. 72, PAGEID #120).  Plaintiff has tried two or three different sleep medications, but they did not work or had side effects.  (Tr. 73, PAGEID #121).  Plaintiff's

primary work-related concern is that he "just can't keep up with the tasks required."  (Tr. 79, PAGEID #127).

### C.  Relevant Medical Evidence

#### 1.  Dr. Marc Clemente

Dr. Marc Clemente is Plaintiff's mental health treatment coordinator.  (Tr. 129, PAGEID #474).  In a questionnaire completed on September 12, 2013, Dr. Clemente opined that Plaintiff suffers from numerous impairments pertaining to his mental residual functional capacity, ranging from marked to mild.  (Tr. 463–65, PAGEID #808–10).  More specifically, Dr. Clemente found marked impairment as to Plaintiff's ability to:  accept instruction from or respond appropriately to criticism from supervisors or superiors; perform and complete work tasks in a normal work day or work week at a consistent pace; perform at production levels expected by most employers; respond appropriately to changes in a work setting; maintain personal appearance and hygiene; and tolerate customary work pressures.  (*Id.*).  Dr. Clemente further noted moderate impairment as to Plaintiff's ability to:  appropriately respond to co-workers or peers; carry through instructions and complete tasks independently; maintain attention and concentration for more than brief periods of time; remember locations, workday procedures, and instructions; be aware of normal hazards and take necessary precautions; and behave predictably, reliably, and in an emotionally stable manner.  (*Id.*).  Dr. Clemente also found mild impairment in certain categories and opined that Plaintiff's condition was likely to deteriorate under the stress of full-time employment.  (*Id.*).  Finally, Dr. Clemente noted that Plaintiff "is already vulnerable because of his depression."  (*Id.*).

#### 2.  Dr. Daniel Judge

Daniel Judge, Psy.D., a staff psychologist for the Department of Veterans Affairs, treated

3

Plaintiff for major depressive disorder, meeting with him weekly beginning on November 4, 2013.  (Tr. 467, PAGEID #812).  In a letter dated January 13, 2014, he indicated that Plaintiff is taking classes for major depressive disorder in the Psychosocial Rehabilitation and Recovery Center ("PRRC") (*id.*), a program that "supports veterans with mental illness by providing skills development, support systems and wellness strategies" (Tr. 109, PAGEID #454).  Dr. Judge also expressed his opinion that Plaintiff's "mental health concerns do significantly impact his functional capacity due to problems of motivation and mood."  (Tr. 467, PAGEID #812).

### D.  Relevant Portions of the ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through June 30, 2015, and has not engaged in substantial gainful activity since February 16, 2012, the amended alleged onset date.  (Tr. 22, PAGEID #70).  The ALJ concluded that Plaintiff had numerous severe impairments, consisting of morbid obesity, type II diabetes mellitus, and a depressive disorder.  (*Id.*).  The ALJ found that none of Plaintiff's severe impairments met or equaled the requirements of any section of the Listing of Impairments.  (Tr. 23, PAGEID #71).  The ALJ also found that Plaintiff retains the ability to understand, carry out, and remember simple and detailed instructions in low-stress environments.  (Tr. 25, PAGEID #73).  He determined that Plaintiff had the ability to make judgments on simple work and to respond appropriately to usual work situations and changes in a routine work setting.  (*Id.*).  As to supervision, the ALJ found that Plaintiff could respond appropriately, except to "high-pressured or over the shoulder supervision."  (*Id.*).  In addition, the ALJ found that Plaintiff had the ability to respond appropriately to co-workers and the public on trivial matters, defined as "dispensing and sharing factual information, not likely to generate an adversarial setting."  (*Id.*).  Based upon the foregoing, he found Plaintiff capable of performing past relevant work as a valet and other jobs

4

that exist in significant numbers in the national economy.  (Tr. 30–31, PAGEID #78–79).

Therefore, the ALJ determined that Plaintiff has not been under a disability and was not entitled

to benefits.  (Tr. 32, PAGEID #80).

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if

supported by substantial evidence, shall be conclusive. . . ."  "[S]ubstantial evidence is defined as

'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th

Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To that end, the Court must "take into

account whatever in the record fairly detracts from [the] weight" of the Commissioner's

decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002).

## III.    DISCUSSION

In her statement, Plaintiff assigned two errors. The Court finds Plaintiff's second

assignment of error—that the ALJ failed to acknowledge and evaluate the treating source

opinion of Dr. Judge—to be meritorious.

### A.  The ALJ's Failure to Address Dr. Judge's Letter

Dr. Judge treated Plaintiff for major depressive disorder on a weekly basis, beginning on

November 4, 2013.  (Tr. 467, PAGEID #812).  Approximately two months after Dr. Judge began

treating Plaintiff, he wrote a letter explaining the nature and frequency of Plaintiff's treatment

and indicating that Plaintiff is taking classes for major depressive disorder in the PRRC.  (*Id.*).

Dr. Judge also opined that Plaintiff's "mental health concerns do significantly impact his

functional capacity due to problems of motivation and mood." (*Id.*).

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

In this case, the ALJ failed to make any mention of Dr. Judge's letter. Defendant admits this but argues it is inconsequential because the letter is not a medical opinion. (Doc. 18 at 9). Medical opinions are defined in 20 C.F.R. § 404.1527(a)(2) as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." The Commissioner provides no case law in support of her position that Dr. Judge's letter is not a medical opinion (*see* Doc. 18 at 8–9), and the Court rejects the

Commissioner's argument.

Dr. Judge's letter does more than make a summary conclusion that Plaintiff is unemployable—a decision left to the Commissioner.  *See, e.g., Schmidt-Ress v. Astrue*, No. 4:09-cv-1502, 2010 WL 1258015, at *6 (N.D. Ohio Mar. 30, 2010) (finding that a medical source's conclusion that claimant was unemployable does not constitute a medical opinion); *Starr v. Comm'r of Soc. Sec.*, No. 1:13-cv-00327, 2013 WL 5952171, at *4 (N.D. Ohio Nov. 6, 2013) (stating that treating physician's letter that claimant "could not function and was a candidate for disability" was not a medical opinion and was not entitled to any special weight).  To the contrary, Dr. Judge's letter reflects a judgment about the nature and severity of Plaintiff's impairment and his mental restrictions by noting that Plaintiff's mental health "significantly impacts" his residual functional capacity.  (Tr. 467, PAGEID #812).  In addition, the letter describes Plaintiff's treatment history, which included weekly appointments and PRRC classes.  (*Id.*).  The letter also notes Plaintiff's symptoms consist of "problems of motivation and mood" and his diagnosis of "Major Depressive Disorder, Recurrent."  (*Id.*).  Thus, Dr. Judge's letter satisfies the criteria in 20 C.F.R. § 404.1527(a)(2).  (*Id.*).  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (finding treatment notes constituted a medical opinion for purposes of the applicable regulations); *Huntington v. Colvin*, No. 1:13CV759, 2014 WL 346288, at *10 (N.D. Ohio Jan. 30, 2014) (noting the mere fact that the "assessment is set forth in a letter, as opposed to on a particular form, is not necessarily determinative or whether it constitutes a 'medical opinion'"); *Bradley v. Astrue*, No. 09–00064, 2011 WL 2618741, at *4 (M.D. Tenn. July 1, 2011) (finding that treating physician's letter setting forth physical restrictions was a medical opinion).

Because Dr. Judge's letter is a treating physician's medical opinion, the ALJ was

required to conduct a controlling-weight analysis to determine if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record.  *LaRiccia*, 549 F. App'x at 384.  The ALJ also was required to give good reasons for the weight assigned to the opinion.  *Dixon*, 2016 WL 860695, at *4.  Here, the ALJ did neither.  Consequently, the ALJ violated both the treating physician rule and the good reasons rule.

### B.  Harmless Error

In certain circumstances, an ALJ's failure to give good reasons for rejecting the opinion of a treating source may constitute *de minimis* or harmless error.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  *De minimis* or harmless error occurs:  (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the regulation.  *Id.* at 547.  Defendant argues harmless error "because the ALJ agreed with Dr. Judge's findings." (Doc. 18 at 9).  More specifically, Defendant states that "[t]he ALJ listed depressive disorder as a severe impairment because it caused significant limitations on his ability to perform basic work activities, which is entirely consistent with Dr. Judge's letter." (*Id.*).  The Court finds this argument lacks merit.

Although the ALJ found Plaintiff's depressive disorder to be a severe impairment (Tr. 22, PAGEID #70), he also found Plaintiff has the residual functional capacity to perform light work (Tr. 25, PAGEID #73).  More specifically, the ALJ found that Plaintiff retains the ability to: understand, carry out, and remember simple and detailed instructions in low stress environments;

make judgments on simple work and respond appropriately to usual work situations and changes in a work setting; respond appropriately to supervision; and respond appropriately to co-workers and the public on trivial matters.  (*Id.*).  Contrary to Defendant's argument, the ALJ's findings are not consistent with Dr. Judge's opinion that Plaintiff's mental health impairment *significantly* impacts his residual functional capacity because of problems related to motivation and mood. (*See* Tr. 467, PAGEID #812).  Simply stated, the ALJ did not make findings consistent with Dr. Judge's opinion such that the treating physician rule and the good reasons rule are irrelevant, *see Wilson*, 378 F.3d at 547, and the Court rejects Defendant's basis for harmless error.

### C.  The Remaining Assignment of Error

Plaintiff also argues that the ALJ violated the treating physician rule and the good reasons rule in assigning little weight to Dr. Clemente's treating physician opinion.  Although this argument has at least some merit, the Court's decision to reverse and remand on Plaintiff's second assignment of error alleviates the need for analysis of Plaintiff's remaining assignment of error.  Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignment of error if appropriate.

## IV.    CONCLUSION

In this case, the ALJ failed to follow the applicable procedural requirements in reaching his disability determination, which precludes meaningful review.  Specifically, the ALJ failed to acknowledge and address Dr. Judge's treating physician opinion, and his error was not *de minimis* or harmless.  The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even if his conclusion ultimately may be justified based upon the record. Accordingly, it is **RECOMMENDED** that the Plaintiff's statement of errors be **SUSTAINED** to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g),

Sentence Four.

## V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date:  June 7, 2016                                  /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE